**IN THE UNITED STATES DISTRICT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| LINDA J. BOYD, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-426-M |
| | § | |
| DALLAS INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court are Defendant's Motion for Summary Judgment [Docket Entry #50] and

Motion to Strike Plaintiff's Summary Judgment Evidence [Docket Entry #66]. For the reasons

explained below, the Motion to Strike is **GRANTED** in part and **DENIED** in part, and the

Motion for Summary Judgment is **GRANTED**.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Linda J. Boyd is a 58-year-old African American woman who was formerly

employed by Defendant Dallas Independent School District (the "District"). This case arises out

of Boyd's termination as a Visiting Teacher/Mental Health Counselor at the Seagoville Youth &

Family Center (the "Seagoville Center") in June 2007.

The Seagoville Center is one of several centers created through a partnership between the

District and Parkland Health & Hospital System to provide physical and mental health care to

students and their families who are referred from various schools within the District. Before

Boyd's employment at the Seagoville Center, she worked as a Visiting Teacher/Mental Health

Counselor at the Eddie Bernice Johnson Youth & Family Center (the "Johnson Center"), another

such center. Boyd's direct supervisor at the Johnson Center was Dr. Constance Lacy.

Lacy reported multiple problems with Boyd's job performance at the Johnson Center, including a poor work ethic, insubordination, difficulty with interpersonal communication, and complaints from various schools.  As a result, Lacy created an "Intervention Plan" that set forth directives for needed changes in Boyd's behavior.  Before the Intervention Plan could be implemented, however, Boyd was transferred to the Seagoville Center.

Boyd worked at the Seagoville Center as a Visiting Teacher/Mental Health Counselor pursuant to a one-year term contract during the 2006-2007 school year.  Dr. Elizabeth Meisinger was her immediate supervisor.  When Meisinger reported similar problems with Boyd's job performance to her own supervisor, Phyllis Green, Green advised Meisinger of the Intervention Plan created by Lacy and authorized its implementation at the Seagoville Center.

When Boyd's performance did not improve, Meisinger recommended that Boyd's contract not be renewed for the 2007-2008 school year.  On March 22, 2007, the District notified Boyd that the Superintendent of the District had endorsed this recommendation of nonrenewal to the Board of Trustees.  Boyd appealed the nonrenewal of her contract to the Texas Education Agency (the "Agency"), which upheld the District's decision after a hearing in which both parties, represented by counsel, presented testimony and evidence.

On March 12, 2008, Boyd filed suit against the District, initially as a pro se plaintiff.  On October 20, 2008, Boyd filed her Second Amended Complaint, alleging:

> [P]laintiff was subjective [sic] to daily harassment, discrimination, mistreatment and unequalible [sic] considerations.  Plaintiff was put under an unlawful Intervention Plan for months and was required to meet weekly, where plaintiff was demeaned and harassed for thirty minutes.  Plaintiff was not treated equally with respect to job assignments and duties.  Plaintiff was given requirements that were not possible to fulfill because there was no availability to carry out the assigned duties, initially and when it was possible plaintiff was denied the opportunity to fulfill the task.  Plaintiff was scrutinized by defendant in a carefully planned and quickly arranged activity.  Plaintiff was subjective [sic] to the

tutelage of defendant.[1]

The District now moves for summary judgment on all of Boyd's claims, which the District treats as arising under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and Texas law.[2]

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[3]  If a reasonable jury could return a verdict for the non-moving party, then there is a genuine issue of material fact.[4]  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.[5]  Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate, by designating specific facts beyond the pleadings that prove the existence of a genuine issue of material fact.[6]  Although "factual controversies are construed in the light most favorable to the nonmovant," there must be evidence from both parties that an actual controversy exists.[7]

## ANALYSIS

### I.    Motion to Strike

The District moves to strike multiple exhibits within Boyd's appendix as inadmissible

---

[1] Boyd's Second Amended Complaint.

[2] Despite retaining counsel on February 17, 2009, Boyd has not amended her Second Amended Complaint, which is hardly a model of clarity.  Although the Court refuses to construe Boyd's complaint under a *pro se* standard, as Boyd's counsel urges, the Court will address her claims as arising under Title VII, the ADEA, the ADA, and the Texas Labor Code.

[3] Fed. R. Civ. P. 56(c)(2).

[4] *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[5] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).

[6] *See* Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 250; *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

[7] *Lynch Props.*, 140 F.3d at 625 (citation omitted).

because they are not properly authenticated. The Motion is GRANTED on that ground as to

Exhibits 5, 6, 16-34, 36-38, 41-47, 49, 52, and 54-70. The Court therefore does not reach the

District's alternate grounds for moving to strike those exhibits. However, the Motion to Strike is

DENIED as to Exhibit 15, DISD's Non-Renewal Policy, and Exhibit 53, the EEOC's Notice of

Right to Sue, because those documents are self-authenticating under Federal Rule of Evidence

902.

The District further objects to numerous statements within Boyd's affidavit. The

majority of the statements identified by the District, which are too numerous to recite here, are

variously inadmissible because they contradict Boyd's prior sworn testimony without

explanation,[8] evidence a lack of personal knowledge,[9] constitute inadmissible hearsay,[10]

constitute factual and/or legal conclusions,[11] are irrelevant,[12] and violate the best evidence rule.[13]

The Court therefore GRANTS the Motion to Strike the statements identified by the District

within Boyd's affidavit, with the exceptions of the penultimate sentence of paragraph 6,

paragraph 7, and the statements alleged in items 6 and 11 of the District's Motion to be outside

of Boyd's personal knowledge. The Motion to Strike is DENIED as to those statements.

II.     Motion for Summary Judgment

        A. Plaintiff's Title VII Claims

        Boyd alleges that the District discriminated against her on the basis of her race and/or

---

[8] *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." (citations omitted)).

[9] *See* Fed. R. Civ. P. 56(e)(1) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

[10] *See* Fed. R. Evid. 801, 802; *Matin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) ("Neither the district court nor this court may properly consider hearsay evidence in affidavits and depositions.").

[11] *See TIG Ins. Co. v. James*, 276 F.3d 754, 759 (5th Cir. 2002).

[12] *See* Fed. R. Evid. 402.

[13] *See* Fed. R. Evid. 1002.

gender in violation of Title VII of the Civil Rights Act of 1964.[14]  Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."[15]

In light of the lack of any evidence showing that Boyd's race or sex played any role in the District's employment decision, the Court applies the burden-shifting framework laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green*.[16]  In order to establish a *prima facie* case of discrimination through the *McDonnell Douglas* analysis, a plaintiff must demonstrate that: (1) she was a member of a protected class; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) others similarly situated were more favorably treated.[17]  If this prima facie showing is made, the burden of evidentiary production shifts to the defendant to articulate one or more legitimate, non-discriminatory reasons for the alleged adverse employment actions.[18]  Once the defendant does so, the burden shifts back to the plaintiff to show, by a preponderance of the evidence, that the defendant's articulated reason is pretextual.[19]

Boyd advances four separate theories of "adverse employment actions" that may be actionable under Title VII: disparate treatment, termination, retaliation, and the creation of a

---

[14] 42 U.S.C. § 2000e-2(a) (2006).

[15] *Id.* § 2000e-2(a)(1).

[16] 411 U.S. 792 (1973); *see Price Waterhouse v. Hopkins*, 490 U.S. 228, 278-79 (1989) (O'Connor, J., concurring) ("Once all the evidence has been received, the court should determine whether the *McDonnell Douglas* or *Price Waterhouse* framework properly applies to the evidence before it."); *Smith v. Xerox Corp.*, --- F.3d ----, 2010 WL 1052837, at *8 (5th Cir. Mar. 24, 2010) ("At some point in the proceedings, of course, the District Court must decide whether a particular case involves mixed motives. . . . [T]he choice of jury instructions depends simply on a determination of whether the evidence supports a finding that just one—or more than one—factor actually motivated the challenged decision." (quoting *Price Waterhouse*, 490 U.S. at 247 n.12 (Brennan, J., plurality opinion) (internal quotation marks omitted); *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 856 (9th Cir. 2002) (en banc) (footnote omitted) (internal quotation marks omitted))).

[17] *Urbano*, 138 F.3d at 206 (citations omitted).

[18] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000) (citing *McDonnell*, 411 U.S. at 802).

[19] *Id.* at 425-26 (citation omitted).

hostile work environment.

      1.  Disparate Treatment

Boyd alleges numerous ways in which she was treated less favorably than Tom Kozlowski, a white male, who was the other counselor at the Seagoville Center.  She asserts that Kozlowski was "treated with respect," "treated as a professional," "allowed time to do his job," "granted preferential treatment in not being accountable for doing his paperwork," "allowed to leave [the] office to see clients," did not have to "do Treatment Plans on his clients," was not subject to a "regular performance plan," and was given preferential help from the Seagoville Center's secretary.[20]

In order to make a *prima facie* showing of an "adverse employment action" in the Fifth Circuit, a plaintiff must show that an employer made an "ultimate employment decision."[21] Examples of ultimate employment decisions include hiring, discharging, promoting, compensating, and granting leave.[22]  The loss of some job responsibilities, reprimands, ostracism by coworkers, formal discipline, rude treatment by the employer, criticism of work and conduct, low evaluations, or a request that the employee perform new job tasks do not constitute ultimate employment decisions.[23]  Boyd's allegations of less favorable treatment do not rise to the level of an actionable "adverse employment action" under the Fifth Circuit standard, and she therefore fails to establish the third element of a *prima facie* case of disparate treatment.

Furthermore, Boyd fails to establish the fourth element of a *prima facie* case because she cannot show that she was treated differently than similarly situated employees of other races or

---

[20] District's App. at 172-73 (Boyd's Interrogatory Answers).

[21] *See Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 531 (5th Cir. 2003).

[22] *Id.* & n.2 (quoting *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1997), and citing multiple decisions to support the various examples given).

[23] *See id.* at 531 n.2 (citations omitted) (listing cases with activities that the Fifth Circuit has held do not constitute ultimate employment decisions).

different gender. For another employee to be "similarly situated," the employee's circumstances must be "nearly identical."[24] Employees with different disciplinary records are not considered to be "nearly identical."[25] There is no evidence that Kozlowski had any prior disciplinary issues, while Boyd had a record of multiple problems at the Johnson Center. Kozlowski had also worked at the Seagoville Center for a year, and had an established client base, while Boyd was new to the Seagoville Center, a difference in circumstances that bears on much of the allegedly disparate treatment of which Boyd complains.

Because the Court determines that Boyd has not made a *prima facie* showing as to a disparate treatment claim, it does not reach the second step of the *McDonnell Douglas* test. The District's Motion for Summary Judgment as to a potential claim for violation of Title VII on the basis of disparate treatment is therefore GRANTED.

2. Termination

To establish a *prima facie* case for Title VII discrimination based on termination, a plaintiff must show that the misconduct for which she was discharged was nearly identical to that engaged in by a non-protected employee who was not discharged.[26] No evidence has been presented to suggest that Kozlowski's performance at the Seagoville Center was problematic in any way. Furthermore, Boyd has not provided any evidence that she was replaced by a male and/or a white employee, a circumstance that, while not dispositive, is material to the question of discriminatory intent.[27]

Even if the Court were to find that Boyd had established a *prima facie* case of discrimination on the basis of her race or sex, the District has articulated multiple legitimate,

---

[24] *Perez v. Tex. Dep't. of Crim. Justice*, 395 F.3d 206, 213 (5th Cir. 2004).
[25] *Dotson v. Gulf*, No. H-05-0106, 2006 U.S. Dist. LEXIS 1893, at *23 (S.D. Tex. Jan. 9, 2006) (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514-15 (5th Cir. 2001)).
[26] *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (per curiam).
[27] *Byers*, 209 F.3d at 426-27.

non-discriminatory reasons for Boyd's termination.  These reasons were set forth in the District's

March 22, 2007 letter notifying Boyd that her employment contract would not be renewed, and

included her failure to follow directives and requests from her supervisor, negative interactions

with other staff members, and poor written communication skills.[28]  In her February 16, 2007

letter recommending non-renewal, Meisinger gave specific examples of Boyd's conduct that

caused concern in several areas of her job performance: failure to follow lines of authority;

attributing hostile or persecutory motives to simple comments, directives, or requests from her

supervisor; a confrontational or argumentative style in written and verbal responses to her

supervisor; negative interactions with other staff members and school personnel; poor written

communication skills; and lack of clarity when presenting clinical case studies.[29]

It is well established that an employee's deficient work performance is a legitimate,

nondiscriminatory reason for termination.[30]  Boyd does not refute the District's explanation with

any specific, admissible evidence showing that the District's stated reasons are pretextual, or that

her termination was motivated by a discriminatory purpose.[31]  Rather, she contests some of the

facts upon which this assessment of her performance was based.[32]  Essentially, she disagrees

with the District that her performance was poor.  Boyd's argument misses the mark.[33]  "The

question is not whether the employer made an erroneous decision; it is whether the decision was

---

[28] *See* District's App. at 85-86.

[29] *See id.* at 69-71, 135-37.

[30] *Perez v. Region 20 Educ. Servs. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999)) ("Poor work performance is a legitimate, non-discriminatory reason for discharge.").

[31] *See Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 421 (5th Cir. 2009) (citing *Richardson v. Monitronics Int'l*, 434 F.3d 327, 336 (5th Cir. 2005)) (holding that plaintiff must provide evidence that the given reason was false or that his termination was motivated by a discriminatory purpose to survive summary judgment); *Pratt v. City of Houston*, 247 F.3d 601, 606-07 (5th Cir. 2001) (holding that a plaintiff can avoid summary judgment only if the evidence, taken as a whole, creates a fact issue as to whether each of the employer's stated reasons was not what actually motivated the employer, and creates a reasonable inference that race or gender was a determinative factor in the discrimination or termination).

[32] *See* Boyd's Response at 11-13.

[33] *See Perez*, 307 F.3d at 325 ("Merely disagreeing with an employer's negative performance assessment is insufficient to show pretext.").

made with discriminatory motive."[34]

Boyd also argues that the absence of previous disciplinary action against her is evidence that her termination was based upon unlawful discrimination.  However, even if the evidence she presented were sufficient to establish such a record—which the Court determines it does not— evidence of past positive evaluations is not sufficient to show that an employee was singled out for termination due to her race or sex.[35]

Finally, the Court finds that general letters of affirmation for Boyd from third parties, which do not address the issue of discriminatory motive, are irrelevant and therefore do not constitute proper summary judgment evidence.

The District's summary judgment evidence establishes that it did not renew Boyd's contract because it concluded that her job performance was inadequate, and that she engaged in unacceptable interactions and communications with others, not because of any discriminatory intent.  Boyd fails to show that these articulated reasons are pretextual.  The District's Motion for Summary Judgment as to the claim for violation of Title VII on the basis of Boyd's termination is therefore GRANTED.

> 3.   Hostile Work Environment

To state a *prima facie* claim for a hostile work environment, a plaintiff must prove that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on race or gender; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment

---

[34] *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995).
[35] *See, e.g., id.*; *Allen v. Solo Cup Co.*, No. 3:05-CV-848-R, 2006 U.S. Dist. LEXIS 47593 at *32 (N.D. Tex. July 13, 2006) (Buchmeyer, J.) (citations omitted); *Steele v. SGS-Thomson Microelectronics, Inc.*, 962 F. Supp. 972, 978 (N.D. Tex. 1997) (Boyle, J.).

and failed to take prompt remedial action.[36]  The Supreme Court has made clear that the phrase

"terms, conditions, or privileges of employment" includes requiring people to work in an

objectively hostile or abusive environment.[37]  However, conduct that is not severe or pervasive

enough to create such an environment is beyond Title VII's purview.[38]

Boyd cannot maintain a claim for hostile work environment because she has not shown

that any alleged harassment was based on her race or gender.  The entirety of her Response, as it

pertains to a potential claim for hostile work environment, is based on irrelevant material and on

argument that does not constitute competent summary judgment evidence.[39]  The District's

Motion for Summary Judgment as to a potential claim for hostile work environment is therefore

GRANTED.

　　　　4.   Retaliation[40]

In order to establish a *prima facie* case for retaliation, a plaintiff must show that: (1) she

engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal

nexus existed between the protected activity and the adverse employment action.[41]

---

[36] *Long v. Eastfield Coll.*, 88 F.3d 300, 309 (5th Cir. 1996) (citing *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 403 (5th Cir. 1993)).

[37] *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)).

[38] *Id.* at 21.

[39] *See* Boyd's Response at 24 (asserting that Boyd's "prima facie hostile workplace environment retaliation claims can be established from the inconsistencies of the content of Defendant's own Brief," that "Defendant's motives in failing and refusing Boyd's contract were based upon pretextual supposition, opinion parading as facts, and conclusory assumptions that have no basis in any uncontroverted material fact," and that Boyd has "demonstrated that DISD's reasons were pretextual . . . in large part through Defendant's own flawed arguments and conflicting demonstrations of 'proof,'" and concluding with a textual table of contents of Boyd's appendix).  The relevance of this last assertion to the hostile workplace claim is lost upon the Court.

[40] The Fifth Circuit has held that *Price Waterhouse* governs Title VII retaliation cases in addition to Title VII discrimination cases, thus opening up the possibility of analyzing Boyd's retaliation claim under a mixed-motives framework.  *See Smith*, 2010 WL 1052837, at *6.  However, the *McDonnell Douglas* framework still applies to Boyd's retaliation claim because she has not shown that race or gender was a substantial motivating factor in the District's adverse employment decision.

[41] *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).   The analysis of retaliation claims is the same for ADEA and ADA claims as it is for Title VII claims, and thus the retaliation claim is only discussed in the Title VII section of this Order. *See Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1121-22 & n.8 (5th Cir. 1998) (citations omitted).  Furthermore, the analysis of a retaliation claim under Section 21.055 of the Texas Labor Code is

Boyd fails to establish the first prong of a *prima facie* retaliation case. An employee has engaged in protected activity if he or she has: (1) opposed an unlawful employment practice, or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing . . . ."[42]

The only protected activity mentioned by Boyd is her opposition to the Intervention Plan, which she describes as "illegal." However, to satisfy the "opposition clause," a plaintiff must show that she had a reasonable belief that the employment practice she opposed was illegal.[43] Boyd does not offer any admissible evidence to support an argument that she had a reasonable belief that the effectuation of the Intervention Plan was an illegal employment action.[44]

Even if Boyd somehow showed that she opposed an unlawful practice, her *prima facie* case still fails on the third prong because she does not show that that her termination was connected to her protected activity. In order to establish a causal link between the protected conduct and the unlawful employment action, the plaintiff must show that "but for" the protected activity, the adverse employment action would not have taken place.[45]

The District's Motion for Summary Judgment as to a potential retaliation claim is therefore GRANTED.

---

also substantially similar to that of retaliation claims brought under Title VII, and will not be discussed separately. *See Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723, 730 (Tex. App.—Fort Worth 2006, no pet.).
[42] *Byers*, 209 F.3d at 427-28 (quoting 42 U.S.C. § 2000e-3(a)).
[43] *Id.* at 428.
[44] *See* Boyd's Response at 15 ("Jeff Scherls told both Dr. Meisinger and Phyllis Green that the Intervention Plan was illegal. He had been informed by Shirley Boss that the plan was illegal."). Even if this evidence were not inadmissible as hearsay within hearsay, it does not establish that Boyd herself believed the Plan to be illegal.
[45] *Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 972 (5th Cir. 1999) (citing *Long*, 88 F.3d at 305 n.4); *Sherrod*, 132 F.3d at 1122.

B.  Plaintiff's ADEA Claims

Under the ADEA, it is unlawful for an employer to discharge a person because of that person's age.[46]  The ADEA covers individuals who are at least forty years old.[47]  Liability depends on whether age actually motivated the employer's decision.[48]  Therefore, Boyd must show that age was the "but-for" cause of the District's decision not to renew her contract.[49]

The *McDonnell Douglas* framework applies to an analysis of ADEA claims.[50]  To demonstrate age discrimination, a plaintiff must show that: (1) she was discharged; (2) she was qualified for the position; (3) she was within the protected class at the time of discharge; and (4) she was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of her age.[51]  If she makes this *prima facie* showing, the burden shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action.[52]  If the employer meets that burden, the burden shifts back to the plaintiff to prove that the employer's proffered reasons are pretextual.[53]

Boyd fails to make a *prima facie* case because she cannot show that age was the determining factor in the District's decision not to renew her employment contract.[54]  Nor does she show that she was replaced by someone outside of the protected age class, or by someone

---

[46] 29 U.S.C. § 623(a)(1) (2006).
[47] 29 U.S.C. § 631(a) (2006).
[48] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).
[49] *See Gross v. FBL Fin. Servs., Inc.*, ___ U.S. ___ , 129 S. Ct. 2343, 2351, 2352 (2009) (citations omitted).
[50] *Jackson v. Cal-Western Packaging Corp.*, No. 09-20411, 2010 WL 1135735, at *2 (5th Cir. Mar. 26, 2010).
[51] *Id.*; *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 575-76 (5th Cir. 2003) (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993)).
[52] *See McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (citation omitted).
[53] *Id.*
[54] *See Gross*, 129 S. Ct. at 2351.

younger than herself.  Boyd's subjective belief that her discharge may have been based on age is insufficient to establish an ADEA claim.[55]

To the extent that Boyd asserts an ADEA claim based upon disparate treatment separate from her termination, that claim likewise cannot withstand summary judgment.  To support a claim for disparate treatment based on age, a plaintiff must show that the employees who were younger and allegedly treated more favorably were "nearly identical" to herself.[56]  The individuals Boyd identified during discovery are not similarly situated to Boyd—none are full-time Visiting Teachers/Counselors like Boyd—nor does she provide any evidence of the ages of these individuals, or describe how they were more favorably treated, except to state that one of the night counselors "did not have to do Treatment Plans for any of his clients."[57]  Because Boyd does not set forth any facts to support her conclusory assertions that she was treated differently than those individuals because of her age, the District's Motion for Summary Judgment is GRANTED as to Boyd's ADEA claims.[58]

C.  Plaintiff's ADA Claims

The ADA prohibits discrimination against a qualified individual with a disability.[59] Because Boyd fails to provide any evidence that age was a substantial motivating factor, let

---

[55] *Waggoner v. City of Garland*, 987 F.2d 1160, 1164 (5th Cir. 1993) (citing *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215 (1984)).

[56] *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007) (citations omitted).

[57] *See* District's App. at 173 (Boyd's Interrogatory Answers) (identifying a part-time night counselor, an administrative assistant, a part-time night clerk, and various named and unnamed night counselors as younger employees who were allegedly treated more favorably than Boyd)*; Powers v. Woodlands Religious Cmty. Inc.*, 323 F. App'x 300, 304 (5th Cir. 2009) (affirming summary judgment on a plaintiff's disparate treatment claim under the ADEA where the plaintiff's "List of Employees Treated Better" did not provide the ages of any of the persons listed, or any facts that would establish similar situations or positions).

[58] *See* District's App. at 173 (Boyd's Interrogatory Answers); *Johnson v. Louisiana*, 79 F. App'x 684, 688 (5th Cir. 2003) (holding that conclusory statements and unsupported allegations are insufficient to rebut the legitimate, non-discriminatory reasons given by defendant).

[59] 42 U.S.C. §§ 12101 *et seq.*

alone a factor at all, in the District's employment decision, the Court applies the *McDonnell Douglas* Title VII burden-shifting analysis to her ADA claims.[60]

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must establish that: (1) she is disabled or regarded as disabled; (2) she is qualified for the job; (3) she suffered an adverse employment action because of her disability; and (4) she was replaced by or treated less favorably than non-disabled employees.[61]

A "disability" under the ADA is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[62] A "major life activity," as defined by the Equal Employment Opportunity Commission regulations, includes such functions as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."[63] A person is "substantially limited" in a major life activity if she is: "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner, or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."[64] An individual may also be "regarded as having such an

---

[60] Although the Fifth Circuit has not directly addressed the question of whether the mixed-motives framework of *Price Waterhouse* is available to plaintiffs in the ADA context, it is not necessary to answer that question here because the Court determines that Boyd's claims do not merit consideration under a mixed-motives framework. *See Crouch v. J C Penney Corp., Inc.*, 337 F. App'x 399, 402 & n.1 (5th Cir. 2009).

[61] *Id*. at 279-80 (citation omitted).

[62] 42 U.S.C. § 12102(1) (2006). Plaintiff advances definitions of terms in the ADA in light of the ADA Amendments Act of 2008 ("ADAAA"). However, the effective date of the ADAAA was January 1, 2009. Plaintiff's Second Amended Complaint was filed on October 20, 2008. The ADAA does not apply retroactively, and therefore the pre-2009 definitions must guide our analysis here. *See Carmona v. Sw. Airlines Co.*, No. 08-51175, 2010 WL 1010592, at *6-7 (5th Cir. Mar. 22, 2010).

[63] 29 C.F.R. § 1630.2(i) (2009); *see also* 42 U.S.C. § 12102(2) (2006).

[64] *Id*. § 1630.2(j).

impairment" if she has a physical or mental impairment that does not substantially limit major life activities, but nonetheless is treated as if she had such a limitation.[65]

The failure to establish an actual or perceived disability is fatal to Boyd's ADA claim.[66] Boyd described her alleged disability as "repetitive stress disorder," a 2004 shoulder injury, and a 2006 elbow injury.[67]  Boyd avers that this alleged disability affects her life because she is "[n]ot able to write well without pain."[68]  This is insufficient to rise to the level of a disability under the ADA.[69]  Moreover, Boyd does not present any evidence that she was regarded by the District as being disabled.

The relevant portions of Boyd's Response, while referring vaguely to evidence in the record, do not cite to any specific facts or evidence that establish a prima facie case for discrimination under the ADA.[70]  The District's Motion for Summary Judgment is therefore GRANTED as to Boyd's ADA claims.

## I.   CONCLUSION

For the reasons stated above, Defendant's Motion to Strike is **GRANTED** in part and **DENIED** in part, and Defendant's Motion for Summary Judgment is **GRANTED** in its entirety.


**SO ORDERED.**

April 27, 2010.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[65] *See id* § 1630.2(l).
[66] *McInnis*, 207 F.3d at 280.
[67] District's App. at 173 (Boyd's Interrogatory Answers).
[68] *Id.*
[69] *Cf. Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir. 1999) ("It is clear, however, that moderate difficulty experienced while walking does not rise to the level of a disability.").
[70] It is Plaintiff's responsibility to highlight disputed issues of material fact.  *See Nicholas Acoustics & Spec. Co. v. H & M Constr. Co.*, 695 F.2d 839, 846-47 (5th Cir. 1983).  "Judges are not ferrets!"  *Id.* at 847.